# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

TIERRA BLANCA RANCH HIGH
COUNTRY YOUTH PROGRAM, *et al.*,

    Plaintiffs,

v.                                              Civ. No. 15-850 KRS/GBW

FELIPE GONZALES,

    Defendant.

## ORDER REGARDING MOTIONS FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS PURSUANT TO APEX DOCTRINE

This matter comes before the Court on Governor Martinez's Motion for Protective Order and to Quash Subpoena (*doc. 133*), Secretary David Jablonski's Motion for Protective Order and Motion to Quash Subpoena (*doc. 136*) and Judge Steven Blankinship's Motion for Protective Order and Motion to Quash Subpoena (*doc. 139*), as well as the attendant briefing (*docs. 143, 147, 148, 159, 160, 161*).

**I.    Background**

During October 2018, Plaintiffs issued subpoenas to Governor Martinez, Secretary Jablonski and Judge Blakinship to testify in depositions in November 2018. *Doc. 143-1* at 68; *doc. 147-1* at 1; *doc. 148-1* at 1. As explained by Plaintiffs, each will be asked to "answer questions regarding [the deponent's] personal knowledge about statements that either [the deponent or their] staff made regarding Tierra Blanca Ranch

High County Youth Program and/or Scott and/or Colette Chandler for the timeframe beginning January 2013 up to the date of the receipt of the Subpoena." *Doc. 143* at 1; *doc. 147* at 1; *doc. 148* at 1. Thereafter, each putative deponent filed a Notice of Non-Appearance at Deposition and Motion for Protective Order and to Quash Subpoena. *Docs. 133, 134, 135, 136, 138, 139*.

Each of the deponents asks the Court to apply the "apex doctrine" and argues that, under that doctrine, their deposition should not be permitted. Plaintiffs contend that the Court should not apply the doctrine, but, even if applied, the depositions are proper.

## II. The "Apex Doctrine"

Before considering whether to apply the "apex doctrine" and, if so, to determine its effect here, the doctrine must be defined. The "apex doctrine" has not been addressed by the Tenth Circuit, yet it has been applied by a variety of federal district courts nationwide.[1] At its most general, the "apex doctrine" provides some protection from depositions to high-level executives and government officials. "The doctrine recognizes that depositions of high-level officers severely burdens those officers and the entities they represent, and that adversaries might use this severe burden to their unfair

---

[1] In each Response, Plaintiffs point out that "[n]o New Mexico appellate court has adopted the 'apex doctrine,' which is clearly contrary to the broad discovery allowed under the New Mexico Rules of Civil Procedure." *Doc. 143* at 2; *doc. 147* at 2; *doc. 148* at 2. The Court will accept this assertion as true, but it is also irrelevant. The instant case is in federal court on federal claims. All questions, therefore, will be resolved pursuant to federal law.

2

advantage." *United States ex rel. Galmines v. Novartis Pharmaceuticals Corp.*, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015) (citations omitted). The doctrine is rooted in Federal Rule of Procedure 26 which provides, "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense **and proportional to the needs of the case**[.]") (emphasis added). However, the nature of the doctrine's protection depends on its application.

Analysis of apex depositions generally falls into two categories. The first category involves only a recognition that a court should remember the burden and potential abuse when targeting high-level executives and officials for depositions. Under this approach, the "apex doctrine" – if it can be called such under this approach – merely highlights considerations which may be applicable when conducting a standard Rule 26 analysis of such depositions. *See, e.g., In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liability Litig.*, 2014 WL 12703776, at *4-*5 (S.D.W.Va. June 30, 2014); *Van Den Eng v. Coleman Co., Inc.*, 2005 WL 3776352, at *2 (D.Kan. Oct.21, 2005). The second category applies a "rebuttable presumption that a high-level official's deposition represents a significant burden upon the deponent and that this burden is undue" within the

meaning of Rule 26. *Galmines*, 2015 WL 4973626, at *2. This presumption is rebutted where the official "(1) possesses special or unique information relevant to the issues being litigated, and (2) the information cannot be obtained by a less intrusive method, such as through written discovery or by deposing lower-ranking employees." *Bard*, 2014 WL 12703776, at *3. Even within this second category, some courts have differed or been unclear about which party bears the ultimate burden of persuasion when a high-level official invokes the apex doctrine. *See, e.g., id.* at *4 (ultimate burden on proponent of deposition "to demonstrate the executive's likely knowledge and to show that less burdensome discovery methods have been or will be unsatisfactory, insufficient, or inadequate") (citation omitted). However, the more exhaustive opinions have concluded that it falls on the party seeking to preclude the deposition. *See, e.g., Naylor Farms, Inc. v. Anadarko OGC Co.*, 2011 WL 2535067, at *1–2 (D. Colo. June 27, 2011); *Galmines*, 2015 WL 4973626, at *2. This approach aligns with the general rule that it is the party seeking the protective order who has the burden to show good cause for a protective order. *See, e.g., S2 Automation LLC. v. Micron Tech., Inc.*, 283 F.R.D. 671, 681 (D.N.M. 2012).

While not explicitly endorsing any particular form of the "apex doctrine," several appellate courts have concluded that high-level government officials should not, absent extraordinary circumstances, be called to testify about their official actions. *See, e.g., Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C.Cir. 1985); *see also In re*

*United States (Holder)*, 197 F.3d 310, 313 (8th Cir. 1999); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993). This principle and the other concerns attendant to apex depositions described above counsel in favor of applying some version of the "apex doctrine." Having considered the various approaches by trial courts, the undersigned is most persuaded by Judge Mix's approach in *Naylor Farms*, in which she held that:

> Under…the "apex doctrine," the Court may protect a high level corporate executive from the burdens of a deposition when any of the following circumstances exist: (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought from the executive can be obtained from another witness; (3) the information sought from the executive can be obtained through an alternative discovery method; or (4) sitting for the deposition is a severe hardship for the executive in light of his obligations to his company. […] [T]he party seeking to depose an executive bears an initial burden of making some showing that the executive has "unique personal knowledge" of some relevant issues…. Upon such a showing, the burden shifts to the executive to demonstrate by evidence that he in fact has no unique personal knowledge or that there exists one of the other three circumstances under which requiring him to sit for a deposition is inappropriate.

2011 WL 2535067, at *1–2 (internal citations omitted). The undersigned will apply this version of the "apex doctrine" to the three depositions sought here.

### III. Analysis

Plaintiffs do not dispute that the three putative deponents are "apex" officials to whom, if the "apex doctrine" applied, the doctrine would apply.[2] Thus, the

---

[2] The Court notes that neither Governor Martinez nor Judge Blankinship currently hold high-level state executive positions. Plaintiffs have waived any argument that they would not be, by virtue of that fact,

5

undersigned will consider first whether Plaintiffs have made an adequate showing that any of the putative deponents have "unique personal knowledge" of facts relevant to any material issue.

The instant case proceeds solely against Defendant Gonzales, individually and in his capacity as a New Mexico State Police Officer, for deprivations that allegedly occurred on September 30, 2013 on Plaintiff's ranch. *See generally doc. 76*. Specifically, Plaintiffs seek to recover for unlawful entry and unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments and unlawful detention in violation of the Fourth Amendment under § 1983. *Id.* at 17-18.[3]

With respect to Governor Martinez, she is not a party in this suit,[4] was not present on Plaintiffs' ranch on September 30, 2013, and the 22 exhibits produced by

---

protected by the "apex doctrine." *See Conforto v. Mabus*, 2014 WL 12560881, at *7 (S.D. Cal. Sept. 24, 2014) ("Executives and high-ranking officials continue to be protected by the apex doctrine even after leaving office.") (quoting *K.C.R. v. Cty. of Los Angeles*, 2014 WL 3434257, at *3 (C.D.Cal. July 11, 2014) (citing *Gauthier v. Union Pacific R. Co.*, 2008 WL 2467016, at *4 (E.D. Tex. June 18, 2008); *contra LivePerson, Inc. v. [24]7.AI, Inc.*, 2018 WL 1319424 at *2 (N.D.Cal. March 14, 2018) ("Moreover, the Court does not find the apex doctrine determinative, because Mr. Murphy is no longer employed by LivePerson.") (citation omitted).

[3] Judge Armijo granted Defendant's Motion for Summary Judgment as to the malicious prosecution claim on June 1, 2018. *Doc. 105*.

[4] Although neither Governor Martinez nor her office is a party to this suit, Plaintiffs' Second Amended Complaint mentions Governor Martinez and her office on three separate occasions. *See doc. 76* at 17 (In October 2013, "the Governor and others in her administration were not only making public statements in regards to 'sealed search warrants' and providing numerous other media statements, they were leading or overseeing the investigation [of TBR]."); *id.* at 6 ("In communications between SP field officers and Clyde and Kay Chandler, field officers made statements that this was 'political', 'from the top'[. C]ommunications and directives from the NM Governor's Office influenced and pressured the investigation by the NM State Police[.]"); *id.* at 16 ("Governor Martinez'[s] actions have created concerns with potential enrollees and their families that, if the youths are enrolled in the program, they will be treated in a similar manner[.]").

Plaintiffs show nothing more than that she received second-hand information on TBR prior to September 30, 2013. *See generally doc. 143-1*. Moreover, the evidence presented by Plaintiffs repeatedly points to the Governor's presence in meetings about the investigations. As such, it is difficult to conclude that her knowledge about what happened at those meetings was unique to her. Furthermore, even if Governor Martinez was more involved in planning and directing the September 30, 2013 "raid" on Plaintiffs' ranch than these exhibits suggest, the relevance of *behind the scenes* activity on the part of the Governor and her office is not apparent. For instance, there is no evidence that her alleged involvement impacted the question of whether Plaintiffs consented to the search or the interview. Perhaps Plaintiffs believe that Defendant Gonzales received orders from the Governor or her office before the "raid" which influenced his state of mind during the events at issue. However, Defendant Gonzales' state of mind is not material to the objective test to determine whether a constitutional deprivation occurred. Ultimately, the Court, having reviewed all the materials, finds that Plaintiffs have failed to make an adequate showing that Governor Martinez possesses "unique personal knowledge" of facts relevant to any material issue.

With respect to Judge Blankinship[5] and Secretary Jablonski,[6] it also appears that they received second-hand information about a significant investigation on TBR. Again, however, it seems that they may have at most been participants in meetings, indicating a lack of unique personal knowledge. As such, Plaintiffs have failed to make an adequate showing that Judge Blankinship and Secretary Jablonski possess "unique personal knowledge" of facts relevant to any material issue.

**IV.    Conclusion and Costs**

Therefore, the Court hereby GRANTS the instant Motions for Protective Order and to Quash Subpoena (*docs. 133, 136,139*). Each respective subpoena is hereby QUASHED.

Finally, having ruled on this discovery dispute, the next question is whether costs and fees should be awarded. Upon resolutions of motions for protective order,

---

[5] Plaintiffs attach two exhibits to their Response that they argue demonstrate Judge Blankinship's unique and relevant knowledge. *See doc. 148-1* at 4-7. Exhibit 3 is an email exchange between Judge Blankinship and Tom Stahl from April 21, 2015 discussing the production of responsive documents in a state case involving TBR. *Id*. at 7. This exchange only reveals that Judge Blankinship had written an email on May 9, 2013 to the Department of Public Safety ("DPS"), passing along information that he had received from the New Mexico Children, Youth and Families Department ("CYFD") regarding TBR. *Id.* Exhibit 2 is the email written on May 9, 2013 described in exhibit 3. *Id.* at 4-6.

[6] Plaintiffs attach four exhibits to their Response that they argue demonstrate Secretary Jablonski's unique and relevant knowledge. *See doc. 147-1* at 3-8. Exhibit 2 is an email discussing TBR to which Secretary Jablonski was copied. *Id*. at 3-5. Although this email may demonstrate that Secretary Jablonski was kept apprised of the relevant issues, it does not demonstrate that Secretary Jablonski possessed anything other than second-hand knowledge. *Id.* Exhibit 3 is an email that reveals that Secretary Jablonski was invited to a meeting with CYFD that was eventually canceled. *Id.* at 6. Exhibit 4 is an email exchange in which Secretary Jablonski was not even included. *Id.* at 7. Finally, exhibit 5 is an email in which Secretary Jablonski discusses a plan to meet on September 10, 2013 with members of DPS, New Mexico State Police and CYFD. *Id.* at 8. Although it is unclear whether Secretary Jablonski indeed attended that meeting, any relevant knowledge could be obtained from others in attendance.

the "losing" party must be required to pay reasonable expenses incurred in making or opposing the Motion. *See* Fed. R. Civ. P. 37(a)(5) (applicable to motions for protective orders pursuant to Fed. R. Civ. P. 26(c)(3)). However, this payment shall not be required if (i) the prevailing party failed to make a good faith effort to obtain the disclosure without court action; (ii) the "losing" party's grounds were "substantially justified" or (iii) the "circumstances make an award of expenses unjust." *Id*. Considering the unsettled law on apex depositions, the Court finds that Plaintiffs' grounds were "substantially justified." Consequently, payment of costs will not be ordered pursuant to Rule 37. Finding no other basis for sanctions, the requests of Governor Martinez, Secretary Jablonski and Judge Blankinship for costs and fees are hereby DENIED.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE