IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TIERRA BLANCA RANCH HIGH
COUNTRY YOUTH PROGRAM;
SCOTT CHANDLER; COLETTE CHANDLER;
and BRYCE HALL,

        Plaintiffs,

Case No. 2:15-cv-00850-KRS-GBW

v.

FELIPE GONZALES,

        Defendant.

## ORDER DENYING WITHOUT PREJUDICE AMENDED MOTION
## FOR SPOLIATION SANCTIONS

**THIS MATTER** comes before the Court on Plaintiffs' amended motion for spoliation sanctions. (Doc. 124). The focus of Plaintiffs' motion are phone conversations between Scott Chandler and Officer Felipe Gonzales that Plaintiffs say Officer Gonzales recorded, but contrary to New Mexico Department of Public Safety ("DPS") policy, did not preserve.[1] According to Plaintiffs, the recording(s) would corroborate their claim that Officer Gonzales used deceit and coercion on September 30, 2013 to gain access to the Tierra Blanca Ranch, where Mr. and Mrs. Chandler operate a program for troubled teens. At the time, Officer Gonzales was investigating allegations of abuse as well as what turned out be an unrelated fatality from an automobile accident. In addition to attorneys' fees, Plaintiffs ask the Court for: (1) judgment in their favor; (2) alternatively, a ruling that Officer Gonzales lacked consent to enter the Ranch; or (3)

---

[1] Plaintiffs' motion mentions numerous recordings and makes many claims of failure to preserve. In their reply, however, Plaintiffs focus entirely on a call they say occurred on either September 27 or 28, 2013. (*See* Doc. 156, at 8) ("Although the request for sanctions is based specifically on the missing audio from either September 27 or 28, the failure to produce other relevant recordings further supports a pattern of failing to produce evidence that would likely support the Plaintiffs' case and be determinantal to the Defendant's case.") Arguably such a pattern, if it existed, might support a finding of bad faith. Because the Court does not reach the intent element of the spoliation analysis, the Court does not consider other allegedly missing recordings.

alternatively, a jury instruction that the missing recording presumably contained evidence favorable to Plaintiffs. With the parties' consent to conduct dispositive proceedings, *see* 28 U.S.C. § 636(c), the Court has considered the parties' submissions, the case record, and heard oral argument on the matter on January 29, 2019.[2] Having done, so the Court **DENIES** Plaintiffs' motion without prejudice.

## BACKGROUND

Together with his wife, Collette, Scott Chandler owns and operates the Tierra Blanca Ranch High Country Youth Program, "a privately funded program for troubled youths[.]" (Doc. 76, ¶¶ 5-7; 11). The program aims to help "troubled teenagers turn their lives around" by providing a "simple ranch life." (*Id.*, ¶11). For many parents, the program is a last resort for "teenagers [who] have become unmanageable and uncontrollable." (*Id.*, ¶12). The Ranch, located in Sierra County New Mexico, has helped youths for over fifteen years.

In 2012, allegations of abuse at the Ranch surfaced. The Sierra County Sheriff's Office, and as is more relevant here, the New Mexico State Police ("NMSP"), opened investigations. In May 2013, Officer Gonzales was tasked with looking into the accusations. On September 22, 2013, a program resident died in an automobile accident. A Ranch employee was driving the vehicle at the time, and four other program participants were inside. Officer Gonzales

---

[2] The Court pauses to point out a few issues. The docket in this case is unnecessarily cluttered with notices of depositions. *See* D.N.M.LR-Civ. 30.1 ("Proof of service of notice of deposition is not filed the Clerk except when the adequacy or content of the notice is the basis for a motion, or a response to a motion, relating to Fed. R. Civ. P. 30 or 31."). Although this case has been contentious, not every deposition was the subject of motion practice. The parties are hereby reminded not to file notices of depositions in the future. More significantly, much of the argument related to the instant motion takes place in various notices of supplemental filings. These documents amount to surreplies taken without leave of court. *See* D.N.M.LR-Civ. 7.4(b). The point is not to be overly formalistic with the rules, but to ensure that each party has a full opportunity to respond/reply to new information, argument, and evidence. What is more, the attachment to the notices of filing, the actual evidence presented to the Court, was not highlighted or underlined to point out the significance of the information, leaving the Court to comb through the information without context. In the future, the Court will not do so and may strike the non-conforming filings *sua sponte*.

investigated the crash as part of the abuse allegations, although he later determined the two matters were unrelated.

On September 30, 2013 at about 10:15 a.m., Gonzales, five other officers from the New Mexico State Police, and five officials from New Mexico's Children, Youth, and Families Department arrived at the Ranch to conduct interviews of the teens and Mr. Chandler. Ms. Chandler met the officers and others at the Ranch's gate; Mr. Chandler was in Deming at a counselling session with the Ranch employee involved in the automobile accident. The four teens with knowledge of the crash were also at Ranch. The other nine program participants were working about forty-five minutes away from the Ranch. Ultimately, Ms. Chandler let the officials onto the property, the remaining youths joined the others at the Ranch, and the youths were interviewed. The Court is unsure from the present record whether Mr. Chandler returned to the Ranch before the youths were interviewed and whether he was interviewed on September 30, 2013. This litigation ensued.

As is relevant here, Plaintiffs claim that Officer Gonzales's warrantless entry violated the Fourth Amendment. Although Mr. Chandler and Officer Gonzales arranged through a series of phone conversations beginning on September 24, 2013 for Officer Gonzales to come to the Ranch and conduct interviews on September 30, 2013, Plaintiffs say Officer Gonzales misrepresented the investigation's scope. Mr. Chandler believed that he and Officer Gonzales agreed only the four youths involved in the crash would be interviewed, although the interview would cover the allegations of abuse as well; Officer Gonzales would not interview Mr. Chandler at the same time as the children; and the other nine youth Ranch residents would not be disturbed from their routine. Officer Gonzales denies any misrepresentations and maintains that he received consent to enter. It is undisputed that Officer Gonzales did not inform Mr. and Mrs.

Chandler that the other law enforcement officers and CYFD personnel would accompany him to the Ranch. Following motion practice, the Court's predecessor ruled there was triable issue of fact whether, under the totality of the circumstances, consent was coerced.

The instant motion centers around the conversations occurring during the period of September 24 through September 30, 2013 when Mr. Chandler and Officer Gonzales discussed the prospective interviews. (Doc. 124). During this period, Officer Gonzales had a general practice of recording his phone calls on the files he worked, including the Ranch investigation. (Doc. 103, at 12). Officer Gonzales would hold a portable Olympus digital recorder next to his office phone and switch on the speaker during calls. (*Id.*). Each day, Officer Gonzales would endeavor to upload the digital files to his local computer and to the NMSP server. (*Id.*). This practice is consistent with DPS's "Use of Recording Equipment," contained within its "Policies and Procedures," which generally requires an officer to carry a portable recorder and utilize it "to document citizen encounters that take place outside the close proximity of the patrol unit" and "upload their digital audio recorders onto the server daily or a soon as practical" (Doc. 124, at 29). The same guidelines prohibit an officer from "eras[ing], reus[ing], or in any manner alter[ing]recordings" unless "no longer needed for court proceedings or Departmental purposes[.]" (*Id.*, at 31).

The filings in this case include a transcript of a recorded conversation between Mr. Chandler and Officer Gonzales on September 24, 2013 when Officer Gonzales first contacted Mr. Chandler and a recording as well as transcripts of a conversation on September 30, 2013 when Officer Gonzales arrived at the Ranch. (*See* Docs. 51-2; 185-1). Mr. Chandler was not at the Ranch on September 30, 2013 when Officer Gonzales arrived, but spoke to Officer Gonzales over Ms. Chandler's cell phone, which Officer Gonzales captured, in part, with his portable

device. (*Id.*). In the recording from the 30th, Mr. Chandler disputes that Officer Gonzales told Mr. Chandler all program participants would be interviewed and that Mr. Chandler was to be interviewed that day at the Ranch as well. (*See* Doc. 185-1, Track 5). Mr. Chandler protests having to disrupt the boys working away from the Ranch and bring them back. (*Id.*). During the call, Officer Gonzales insists he clarified what would happen during a "Friday" telephone conversation, which Officer Gonzales says he recorded. (*Id.*). According to a 2013 calendar, the Friday before September 30 was September 27, 2013. Either as part of initial disclosures or pursuant to written discovery, Officer Gonzales has not produced any other recordings of telephone conversations between him and Mr. Chandler.

Drawing on the "Friday" conversation, other indicia of missing recordings, and most recently, Mr. Chandler's cell-phone records Officer Gonzales produced in discovery that Officer Gonzales obtained pursuant to a warrant as part of the criminal investigation, Plaintiffs assert a conversation took place on September 27 or 28, 2013, Officer Gonzales recorded it, and Officer Gonzales failed to persevere it. (*See* Docs. 124; 189). Initially and during oral argument, Officer Gonzales maintained there was no proof a phone call ever occurred. (Doc. 190-1, at 1-2). Shortly after turning over the call log, Officer Gonzales's attorney acknowledged in an affidavit "it appears there may have been at least one (1) phone call between Scott Chandler's cell phone and a telephone number at the New Mexico State Police office in Las Cruces, NM on September 28, 2013." (*Id.*).

## ANALYSIS

"Spoliation" involves "the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *Browder v. City of Albuquerque*, 209 F. Supp. 3d 1236, 1243 (D.N.M 2016) (internal citation omitted). If

appropriate, the Court may sanction a litigant for spoliation under its inherent authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (explaining that "by their very creation," federal courts are vested with powers, including "the ability to fashion an appropriate sanction for conduct which abuses the judicial process"). "[S]poliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *EEOC v. JetStream Ground Servs.,* 878 F.3d 960, 964 (10th Cir. 2017) (citation omitted). The party seeking sanctions must prove, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it. *See Browder*, 209 F. Supp. 3d at 1243. In a nutshell, the analysis requires the Court to first determine if sanctions are warranted and then decide what sanction to impose in the exercise of restraint and discretion. *See Chambers*, 501 U.S. at 45. In this case, the Court reaches only the first question.

### A. <u>The Propriety of Sanctions</u>

#### 1. *Obligation to safeguard evidence*

Officer Gonzales had a duty to preserve all recordings he made between September 24 and 30, 2013. Section 6(B) of New Mexico's Department of Public Safety Policies & Procedures on Use of Recording Equipment provides required Officer Gonzales to do so, (*see* Doc. 124, at 32), and courts generally have accepted entity regulations as sources of a duty to safeguard tangible items that exist. *See*, *e.g.*, *Hicks v Gates Rubber Co.*, 8333 F.2d 1406, 1418-19 (examining failure to adhere to federal regulation requiring preservation of employment records). In any event, Officer Gonzales does not dispute this point or claim he lacked notice of potential

litigation.[3] Instead, Officer Gonzales contends there was nothing to preserve: He contends Plaintiffs' only evidence of contact between Mr. Chandler and Officer Gonzales on September 27 or 28, 2013 is Mr. Chandler's uncorroborated affidavit. And even if a conversation occurred, Officer Gonzales submits, there is no proof a recording existed and was lost or destroyed.

With the latest round of discovery, Officer Gonzales's position is less certain. Although the parties leave the Court to decipher the phone logs, it appears Officer Gonzales's number at NMSP's office in Las Cruces called Mr. Chandler's cell phone on September 28, 2013 at 2:30 p.m., with the call lasting for 377 seconds; and Mr. Chandler's cell phone called Officer Gonzales's office once on September 28, 2013 at 3:03 p.m., and twice on September 27, 2013 at 1:16 p.m. and 2:46 p.m., respectively with the calls lasting for 100, 83, and 92 seconds respectively. (*See* Doc. 189-1, at 7-8). Contrary to Officer Gonzales's contention, the phone logs corroborate telephone contact between Officer Gonzales and Chandler during the time in question. Furthermore, even before these records were produced, other circumstantial evidence of a conversation existed. Officer Gonzales referred to a "Friday" (September 27, 2013) call during the September 30, 2013 conversation, told Ms. Chandler that he had spoken to Mr. Chandler on "Friday" and mentioned conversation*s* with Mr. Chandler between September 25 and 30, 2013 in an October 7, 2103 police report.[4]

---

[3] Such a contention would likely fail; as of October 9, 2013, there was litigation in state court arising from the September 30, 2013 interviews of the kids at the Ranch. *See State ex rel. Children, Youth & Families Dep't v. Scott C.*, 365 P.3d 27, 29 (N.M. Ct. App. 2016) (describing factual background).

[4] (*See* Doc. 185, Track 5) (capturing September 30, 2013 conversation between Mr. Chandler and Officer Gonzales over Ms. Chandler's speaker phone) (Mr. Chandler: "You did not tell me this, You did not tell me this."; Officer Gonzales: "Yes, I did, sir."; Mr. Chandler: In your voicemail, . . . you said you wanted to talk to the boys that were in the accident."; Officer Gonzales: "Then when we talked on *Friday*, which the conversation was recorded, I tell you that I want to talk to everybody pertaining to [the abuse investigation] . . .") (emphasis added); Doc. 185., Track 6 (recording conversation with Ms. Chandler at the gate of the Ranch on September 30, 2013) (Ms. Chandler: "He says that he even has the voicemail that clearly states that it was the four boys from the accident that you wanted to speak with today"; Officer Gonzales: "Cause I recorded . . . our phone conversation on Friday, and I told him we are going to want to interview those four kids and all kids at the Ranch and that is why I'd asked him how many kids do you have at the Ranch and that's when he told me I have thirteen. Like okay, awesome, I would like you cooperation to interview all those kids at the ranch, and he was like oh, okay . . . . It took us a while, me and

Although the phone logs lend credence to Plaintiffs' position, they are not proof positive of spoliation; and the records create other confusion that casts doubt on the parties' recollections. For instance, the documents do not disclose the substance of the calls, who spoke on the phone, and whether a conversation actually occurred, as opposed to a party leaving a telephone message or waiting on hold. Additionally, Mr. Chandler described a lengthy conversation on September 28, 2013, but the longest call on that day was approximately six minutes. (*Compare* Doc. 94, at 48 *with* Doc. 189, at 7-8). And there were at least one other call on that day and two additional calls on the September 27, 2013. (*See* Doc. 189, at 8). In other words, there are a total of four calls where Plaintiffs say there was one and where Officer Gonzales maintained there were none. On motion practice alone, the Court cannot determine when the allegedly favorable conversation occurred. Despite Plaintiffs' plausible argument that the call took place on September 27 or 28, 2013, the uncertainty in the present record means they have not carried their burden.

Even if the conversation occurred as Plaintiffs contend, they must still prove that Officer Gonzales recorded the call. There is circumstantial evidence to that effect. Officer Gonzales noted in an October 7, 2013 police report not only that there were conversation*s* between September 25 and 30, but also that they were recorded. (Doc. 124, at 71). Officer Gonzales testified at his deposition that recordings were missing from that time period. (*Id.*, at 65). And Officer Gonzales told Mr. and Ms. Chandler on September 30, 2013 that he recorded the "Friday" call. (*See* Doc. 185, Track 5, Track 6). None of this information precludes human error or technical difficulties that could explain why no recording exists. Officer Gonzales explained in his affidavit that "[t]here have been times that phone conversations were not recorded due to

---

Chandler, me and Scott; we talked for a while. . . ."); & Doc. 124, at 71 (Officer Gonzales October 7, 2013 police report) (explaining that on September 25, 2013 "and the dates to follow, [Officer Gonzales] spoke to Scott Chandler via telephone (conversations were recorded)" and the two "agreed that on Monday, September 30, 2013, [Officer Gonzales] and other agents would interview the thirteen children who currently reside at the ranch.")

issues beyond my direct control, such as . . . equipment failure [of the digital recorder] or batteries dying[.]" (Doc. 103, at 13). Specifically, Officer Gonzales averred that "[b]ased on the complete absence of the recoding . . . there may have been an error with the equipment recording the alleged call[.]" (*Id.*). Determining whether Officer Gonzales recorded the conversation requires assigning different weight to competing facts and evaluating the credibility of witnesses, which are tasks typically reserved for a trial. On the present record, Plaintiffs have not proven the evidence existed and was lost or destroyed.

### 1. *Prejudice*

"The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause." *Gates Rubber Co. v. Bando Chem. Indus.,* 167 F.R.D. 90, 104 (D. Colo. 1996). Prejudice is also assessed in terms of relevance: the spoliated evidence must be relevant to the case to qualify under this prong. In fact, "[t]he degree of prejudice suffered by a party who experiences spoliation is generally measured in terms of how the unavailability of the spoliated evidence affects proof of the party's claim or claims." *Session v. Romero*, 2019 U.S. Dist. LEXIS 4389, at *7-8 (D. Colo. Jan. 10, 2019). As above, the Court cannot resolve this element of the analysis on motion practice.

Plaintiffs maintain the missing recording "would support Mr. Chandler's claim that he only agreed to have four youths who were involved in a car accident . . . interviewed and only if either he or someone else from the [Ranch] were at the interviews." (Doc. 124, at 4). Additionally, Plaintiffs say, the recording would "support Mr. Chandler's statements that he was not informed that he was a subject of the investigation" that Officer Gonzales "would be accompanied by numerous other State Police officers and personnel from CYFD, and that the

intent was to interview all of the youths residing at the Ranch." (*Id.*, at 5). The relevance of the recording is not immediately clear—whatever deceit Gonzales used during the "Friday" conversation, Officer Gonzales's intentions were known to the Chandlers on September 30 before Officer Gonzales and the others entered the Ranch. Nonetheless, the "Friday" conversation could corroborate Plaintiffs' position that Officer Gonzales consistently misrepresented his plans, which might bear on the voluntariness of consent on the 30th. The call could underscore Officer Gonzales's failure to inform Mr. Chandler that Officer Gonzales would be accompanied by numerous other State Police officers and personnel from CYFD, and that the intent was to interview all of the youths residing at the Ranch, as well as Mr. Chandler.

Circumstantial evidence rebuts some of Plaintiffs' claims of favorable evidence. During the first conversation on September 24, 2013, Officer Gonzales told that Mr. Chandler that Officer Gonzales wanted to interview as many youths as possible and as to both the accident *and* the allegations of abuse:

| | |
|---|---|
| OFFICER GONZALEZ: | . . . Like I said, I would like to get everybody's side of the story as far as my investigation and their investigation because unfortunately it's all links together. They are kids at your ranch still. |
| SCOTT CHANDLER: | I'm trying to understand. Like the guys involved in the accident, is it regarding the accident? Or is it regarding all this other stuff? |
| OFFICER GONZALEZ: | It's going to regard both, unfortunately. Hello? Are you there Mr. Chandler? |
| SCOTT CHANDLER:<br>. . . | Yes. |
| OFFICER GONZALEZ: | Okay. Well unfortunately -- How many kids total do you have in the ranch? |
| SCOTT CHANDLER: | Thirteen. |

| | | |
|---|---|---|
| OFFICER GONZALEZ: | | Oh, okay. I thought it was like twenty something. |
| SCOTT CHANDLER: | | No. |
| OFFICER GONZALEZ: | | Okay. Thirteen. |
| SCOTT CHANDLER: | | I was just was wondering why we picked them and who picked them and it still looks to me like, overall, the other matter especially since a lot of these kids weren't even here at that time. |
| OFFICER GONZALEZ: | | Okay. |
| SCOTT CHANDLER: | | Why we can't just stick to the guys who are on the outside and the parents and stuff like that too, and their side of it? |
| OFFICER GONZALEZ: | | Well, like I said I want to interview everybody possible, even people on the outside, but I have people from the outside. I don't have none of that information, so if I were to meet with you and you were to give me all of that information that would be perfect too, but it has to be fair to everybody. I can't just get people who have graduated from the program. It has to be people who maybe just left the program. |

(Doc. 51-2, at 23; 32-33) (grammatical irregularities in the original).

Officer Gonzales also gave his version of the substance of the "Friday" conversation when he spoke to the Chandlers on September 30, 2013. (*See* Doc. 185, Track 5 (capturing September 30, 2013 conversation between Mr. Chandler and Officer Gonzales over Ms. Chandler's speaker phone) (Mr. Chandler: "You did not tell me this, You did not tell me this."; Officer Gonzales: "Yes, I did, sir."; Mr. Chandler: In your voicemail, . . . you said you wanted to talk to the boys that were in the accident."; Officer Gonzales: "Then when we talked on *Friday*, which the conversation was recorded, I tell you that I want to talk to everybody pertaining to [the abuse investigation] . . .") (emphasis added); Track 6 (recording conversation with Ms. Chandler at the gate of the Ranch on September 30, 2013) (Ms. Chandler: "He says that he even has the

voicemail that clearly states that it was the four boys from the accident that you wanted to speak with today"; Officer Gonzales: "Cause I recorded . . . our phone conversation on Friday, and I told him we are going to want to interview those four kids and all kids at the Ranch and that is why I'd asked him how many kids do you have at the Ranch and that's when he told me I have thirteen.")).

Based upon the various competing versions of events concerning the number and timing of calls between Mr. Chandler and Officer Gonzales, the Court is not convinced that the "Friday" call was not actually the call between them on September 24, 2013. As Officer Gonzales describes it, the substance of the "Friday" call sounds very similar to the substance of the September 24, 2013 telephone call, which was recorded. However, even if there was a telephone call between Mr. Chandler and Officer Gonzales on Friday, September 27, 2013, Officer Gonzales recorded the telephone call and failed to preserve the recording, the Court cannot resolve the prejudice question based on the evidence before it —whether there is a "reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to [Plaintiffs'] cause." *Gates Rubber* Co, 167 F.R.D. at 104. There are competing, plausible inferences as to what was said during the call, and determining the more reasonable scenario is ill-suited to motion practice. The same is true as to the other elements of spoliation: when precisely the call occurred and whether Officer Gonzales recorded the conversation.

While the Court will not grant relief here, the Court will not foreclose Plaintiffs from examining witnesses at trial as to the elements of spoliation and renewing their motion after the presentation of evidence outside the presence of the jury. At trial, the Court will have the tools

traditionally available to make findings and assess credibility to determine whether the preponderance of the evidence warrants some form of sanction.

## CONCLUSION

Although there is circumstantial evidence of the call Plaintiffs claim took place on either September 27 or 28, 2013, the Court cannot discern on the basis of motion practice when exactly the call took place, whether Officer Gonzales recorded it, and whether, if it was recorded and lost or destroyed, the call included information favorable to Plaintiffs' case. Plaintiffs have therefore not met their burden to prove spoliation on the present record. The Court, however, will not foreclose Plaintiff from examining witnesses at trial on the issue of spoliation and renewing their motion outside the presence of the jury after the presentation of the evidence.

**IT IS, THEREFORE, ORDERED** that Plaintiffs' amended motion for spoliation sanctions (Doc. 124) is **DENIED without prejudice**. Plaintiffs may renew their motion at trial as set forth above.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent